JENNER & BLOCK LLP
Brandon D. Fox (SBN 290409)
BFox@jenner.com
Alexander M. Smith (SBN 295187)
ASmith@jenner.com
Kristen L. Green (SBN 328618)
KGreen@jenner.com
Eric W. Wolff (SBN 341180)
Eric.Wolff@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   (213) 239-5100
Facsimile:    (213) 239-5199

Alison I. Stein (*pro hac vice*)
AStein@jenner.com
1155 Avenue of the Americas
New York, NY  10036-2711
Telephone:   (212) 891-1600
Facsimile:    (212) 891-1699

Attorneys for Defendants Live Nation
Entertainment, Inc. and Ticketmaster LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MADRIGAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> LIVE NATION ENTERTAINMENT, INC., et al. <br><br> Defendants. | Case No. 2:25-cv-02375-JFW (KSx) <br><br> **MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** <br><br> Judge:        Hon. John F. Walter <br> Courtroom:   7A (First Street) <br> Date:         June 23, 2025 <br> Time:         1:30 p.m. <br> Trial Date:   Not Set <br> PTC Date:    Not Set |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ....................................................................................................... 3

      A.    Ticketmaster's Ticketing Business. ............................................................... 3

      B.    Allegations of the FAC. ................................................................................. 5

III.  ARGUMENT ............................................................................................................ 7

      A.    Plaintiffs Have Not Plausibly Alleged That Ticketmaster's Ticketing
            Practices Mislead Reasonable Consumers. .................................................... 8

      B.    Plaintiffs Have Not Stated a Plausible Claim Under California or New
            York's Ticket Pricing Statutes. ................................................................... 13

            1.    Plaintiff Tempest has not stated a claim under Section 25.07(4). ...... 13

            2.    Plaintiff Madrigal's claim under the Honest Pricing Law also
                  fails…........................................................................................... 16

      C.    Plaintiffs Lack Both Article III and Statutory Standing Because They
            Have Not Alleged a Cognizable Economic Injury ........................................ 16

      D.    The Voluntary Payment Doctrine Bars Plaintiffs' Claims ............................ 22

      E.    Plaintiffs Lack Standing to Seek Injunctive Relief. .................................... 23

IV.   CONCLUSION ....................................................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amalfitano v. NBTY Inc.*,
    9 N.Y.S.3d 352 (N.Y. App. Div. 2015) ........................................................................17

*In re Amazon Service Fee Litig.*,
    2024 WL 3460939 (W.D. Wash. July 18, 2024) ....................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..........................................................................................7, 12, 20

*Avella v. City of New York*,
    29 N.Y.3d 425 (N.Y. 2017) .........................................................................................15

*Babaian v. Dunkin Brands Grp., Inc.*,
    2018 WL 11445614 (C.D. Cal. Feb. 16, 2018) .............................................................8

*Beardsall v. CVS Pharmacy, Inc.*,
    953 F.3d 969 (7th Cir. 2020) .........................................................................................8

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) .......................................................................................8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) .....................................................................................................18

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) .......................................................................................10

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) .......................................................................................18

*Browning v. Am. Honda Motor Co.*,
    549 F. Supp. 3d 996 (N.D. Cal. 2021) ........................................................................14

*Cervantes v. Countrywide Home Loans, Inc.*,
    656 F.3d 1034 (9th Cir. 2011) .....................................................................................25

*Charbonnet v. Omni Hotels & Resorts*,
    2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ....................................................11, 12, 19

*Cimoli v. Alacer Corp.*,
    546 F. Supp. 3d 897 (N.D. Cal. 2021)................................................................24

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983).............................................................................................24

*In re Coca-Cola Mktg. & Sales Practices Litig.*,
    2021 WL 3878654 (9th Cir. Aug. 31, 2021) ....................................................17

*Cordes v. Boulder Brands USA, Inc.*,
    2018 WL 6714323 (C.D. Cal. Oct. 17, 2018) ..................................................24

*Curanaj v. Tao Operating Group LLC*,
    2024 WL 5456192 (N.Y. Sup. Ct. July 25, 2024)................................18, 19, 22, 23

*Davidson v. Kimberly-Clark Corp.*,
    889 F.3d 956 (9th Cir. 2018) ...........................................................................24

*Dillon v. U-A Columbia Cablevision of Westchester, Inc.*,
    100 N.Y.2d 525 (2003) .....................................................................................22

*Downey v. Pub. Storage, Inc.*,
    44 Cal. App. 5th 1103 (2020) ..........................................................................22

*Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*,
    893 A.2d 569 (D.C. 2006) ................................................................................22

*Easter v. City of Orlando*,
    249 So.3d 723 (Fla. Dist. Ct. App. 2018) ........................................................22

*Fink v. Time Warner Cable*,
    714 F.3d 739 (2d Cir. 2013) ...............................................................................9

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ................................................................................9

*Frias v. City Winery New York, LLC*,
    2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024)............................................15

*Garcia v. Apple Seven Servs. San Diego, Inc.*,
    2021 WL 3725921 (S.D. Cal. Aug. 20, 2021) ....................................................8

*Grayson v. AT&T Corp.*,
    15 A.3d 219 (D.C. 2011) ..................................................................................17

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

*Harris v. Las Vegas Sands L.L.C.,*
     2013 WL 5291142 (C.D. Cal. Aug. 16, 2013) ........................................................ 11, 12

*Heckman v. Live Nation Entm't, Inc.,*
     120 F.4th 670 (9th Cir. 2024) .................................................................................. 10

*Hodgers-Durgin v. de la Vina,*
     199 F.3d 1037 (9th Cir. 1999) ................................................................................. 25

*Kahn v. Walmart Inc.,*
     107 F.4th 585 (7th Cir. 2024) .................................................................................. 21

*Keating v. Nordstrom, Inc.,*
     2020 WL 1846988 (D. Alaska Apr. 10, 2020) ......................................................... 21

*Kim v. Carter's Inc.,*
     598 F.3d 362 (7th Cir. 2010) ................................................................................... 17

*Knievel v. ESPN,*
     393 F.3d 1068 (9th Cir. 2005) ................................................................................... 7

*Lavie v. Procter & Gamble Co.,*
     105 Cal. App. 4th 496 (2003) ................................................................................... 9

*Lazy Y Ranch v. Behrens,*
     546 F.3d 580 (9th Cir. 2008) ................................................................................... 14

*Mayfield v. United States,*
     599 F.3d 964 (9th Cir. 2010) ................................................................................... 24

*McGee v. S-L Snacks Nat'l,*
     982 F.3d 700 (9th Cir. 2020) ................................................................................... 18

*McIntosh v. Walgreens Boots Alliance, Inc.,*
     135 N.E.3d 73 (Ill. 2019) ........................................................................................ 22

*Moore v. Trader Joe's Co.,*
     4 F.4th 874 (9th Cir. 2021) ....................................................................................... 9

*Mophie, Inc. v. Shah,*
     2014 WL 10988339 (C.D. Cal. Jul 24, 2014) ........................................................... 8

*Ounjian v. Globoforce, Inc.,*
     89 F.4th 852 (11th Cir. 2023) .................................................................................. 17

*Physicians for Integrity in Med. Research, Inc. v. Hamburg,*
2014 WL 12591629 (C.D. Cal. Oct. 23, 2014) ................................................ 21

*Riva v. Pepsico, Inc.,*
82 F. Supp. 3d 1045 (N.D. Cal. 2015) ........................................................... 8

*Salling v. Budget Rent-a-Car Sys., Inc.,*
672 F.3d 442 (6th Cir. 2012) ........................................................................ 23

*Spokeo, Inc. v. Robins,*
578 U.S. 330 (2016) .......................................................................... 16, 17, 20

*Steinman v. Malamed,*
185 Cal. App. 4th 1550 (2010) ..................................................................... 22

*TransUnion LLC v. Ramirez,*
594 U.S. 413 (2021) ................................................................................ 17, 20

*Veera v. Banana Republic, LLC,*
6 Cal. App. 5th 907 (2016) ...................................................................... 21, 22

*Washington v. Hyatt Hotels Corp.,*
2020 WL 3058118 (N.D. Ill. June 9, 2020) ................................................. 13

*Weinstein v. eBay, Inc.,*
819 F. Supp. 2d 219 (S.D.N.Y. 2011) ........................................................... 9

*Whiting v. AARP,*
637 F.3d 355 (D.C. Cir. 2011) ....................................................................... 8

**Statutes**

Cal. Bus. & Prof. Code § 17204 .................................................................... 17

Cal. Bus. & Prof. Code § 17535 .................................................................... 17

Cal. Civ. Code § 1770 ............................................................................... 2, 16

Cal. Civ. Code § 1780 .................................................................................... 17

N.Y. Arts & Cult. Affs. L. § 25.07 ........................................................ 2, 13, 14

**Court Rules**

Fed. R. Civ. P. 12 ............................................................................................ 7

**Other Authorities**

2022 N.Y. Sess. Laws, ch. 358 (S. 9461) ........................................................................ 15

## I.      INTRODUCTION

Plaintiffs allege that Ticketmaster "advertise[d] deceptively low prices at the outset of its transactions while hiding expensive junk fees until the end of the transaction."[1]  First Am. Compl. ("FAC") ¶ 1.  Ticketmaster did no such thing.  It did not charge "junk fees"; instead, it charged industry-standard fees that covered the costs of hosting live events and maintaining a state-of-the-art ticketing platform.  Nor did Ticketmaster "hide" anything from consumers.  To the contrary, Ticketmaster provided information about its fees throughout, and it enabled consumers to determine at multiple steps throughout their ticketing experience whether the price included additional fees and what these fees were.  And while Plaintiffs assert that Ticketmaster should have disclosed the "all in" price at the outset of every transaction, Plaintiffs do not dispute that, in every transaction, Ticketmaster disclosed all fees before any money changed hands and that Plaintiffs purchased the tickets with full knowledge of those fees—which means that Plaintiffs have not alleged a legally cognizable injury.  This Court should dismiss this lawsuit for at least four separate reasons:

First, Plaintiffs have not plausibly alleged that Ticketmaster's conduct was deceptive.  While Plaintiffs allege that Ticketmaster failed to disclose the "all in" price at the outset of each transaction, Ticketmaster's website disclosed the existence of added fees in multiple different ways throughout the process.  In states requiring "all in" pricing, Ticketmaster complied with those laws by disclosing the ticket price and fees at all times.  Even in those states that do not mandate "all in" pricing, Ticketmaster allowed consumers to see the "all in" price by selecting a button that says "[s]ee prices including fees."  Ticketmaster also disclosed that the price is "+Fees" at the point of seat selection, regardless of whether a consumer toggled the button that displays the *amount* of added

---

[1] Long before Plaintiffs filed this lawsuit, Ticketmaster had planned to change to "all in" pricing in all states and at all venues.  Ticketmaster fully implemented that change by May 12, 2025, even in those states that do not require "all in" pricing.  Months or years before this platform-wide change, Ticketmaster adopted "all in" pricing not only for events in jurisdictions with "all in" pricing laws, such as California and New York, but also for events at any Live Nation venue in any state.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

fees.  And Ticketmaster's Terms of Use include a "Purchase Policy" that discloses and describes the fees Ticketmaster may charge.  Many courts have dismissed similar "hidden fee" lawsuits when the defendant disclosed those fees in this manner during the booking process.  This Court should do the same.

Second, Plaintiffs have not stated a viable claim that Ticketmaster violated New York or California law.  Plaintiffs have not stated a claim under Section 25.07(4) of the New York Arts & Cultural Affairs Law, both because Ticketmaster's website reflects that it complied with this law and because Plaintiffs' allegations confirm that Ticketmaster disclosed the total cost of the ticket "prior to the ticket being selected for purchase," which is all the statute requires.  N.Y. Arts & Cult. Affs. L. § 25.07(4).  Plaintiffs' claim under California's "Honest Pricing Law," Cal. Civ. Code § 1770(a)(29), similarly fails—even if one takes Plaintiffs' allegations as true—because a purchaser who uses Ticketmaster's toggle switch can see the total price of his or her ticket from the outset of the transaction.

Third, even if Plaintiffs' claims were otherwise viable (which they are not), Plaintiffs lack both Article III and statutory standing, as they have not plausibly alleged that Ticketmaster's failure to display the "all in" price at the outset of their ticket purchases caused Plaintiffs any concrete economic harm.  While the FAC contains conclusory allegations that Plaintiffs would not have purchased their tickets had they known that a portion of the price included "junk fees," Plaintiffs do not contend that the tickets they purchased were worth less than the amount they paid for them, that Ticketmaster would have agreed to sell them the tickets for a lower price that did not include the fees, or that similar tickets were available to purchase elsewhere for less.  And while Plaintiffs claim that Ticketmaster's alleged failure to disclose added fees at the outset of the ticketing process is unlawful (which is wrong), they do not dispute that Ticketmaster is entitled to charge fees.  Plaintiffs' lawsuit therefore boils down to a dispute about the *timing* of the disclosure of those fees, which does not establish a concrete or legally cognizable injury.

Fourth, Plaintiffs' claims are barred by the voluntary payment doctrine, which does not allow a plaintiff to recover money she willingly paid with knowledge of the facts.

2

While Plaintiffs claim that Ticketmaster wrongfully failed to disclose the "all in" cost at the outset of each ticketing transaction, they do not (and cannot) dispute that Ticketmaster disclosed the full cost of each ticket before each Plaintiff completed each purchase.

Finally, leaving aside the fact that Ticketmaster has already implemented "all in" pricing across its entire platform, Plaintiffs' claims for injunctive relief fail even on their own terms. Because the Plaintiffs and every putative class member have bought tickets through Ticketmaster, they would therefore know that the initial price may not include certain added fees even before they initiate another ticketing transaction. Even if one credits Plaintiffs' allegation that these practices are "ongoing," they cannot show a likelihood that they will be misled by Ticketmaster's alleged practices in the future. As a result, they lack standing to seek injunctive relief—either on their own behalf or on behalf of the putative classes they seek to represent.

## II.    BACKGROUND

### A.    Ticketmaster's Ticketing Business.

Live Nation promotes, operates, and sells tickets for live events like concerts, plays, and sporting events. *See* FAC ¶¶ 117, 120. Ticketmaster, which is a subsidiary of Live Nation, operates the world's largest ticketing marketplace for live events. *See id.* ¶¶ 118–120. Event organizers use Ticketmaster to facilitate the sale of live event tickets to consumers. *See id.* ¶ 120. Those event organizers make tickets available, set ticket prices, and determine whether to charge other fees. Ticketmaster's role is to connect willing sellers with willing buyers and to process their ticketing transactions.

The total cost of a ticket includes not only the base price, but also various added fees. Although Plaintiffs call them "junk fees," these fees offset the costs that go into hosting live events and processing ticketing transactions. For example, many tickets include a "service fee," which covers the costs of hosting live events as well as the costs of the technology, employees, and resources that Ticketmaster uses to provide a safe and secure ticketing experience. The tickets may also include an "order processing fee," which accounts for the costs that Ticketmaster incurs to process ticketing transactions; an optional

3

"delivery fee," which accounts for the cost associated with delivering physical tickets to buyers if a user selects this option; or a "facility charge," which is a venue-specific charge that covers a facility's operational costs.  Ticketmaster distributes the vast majority of these fees to event organizers and venues.

Ticketmaster is committed to price transparency.  In addition to complying with all applicable state laws governing ticket sales, Ticketmaster enabled consumers in every state to see the "all in" cost of their tickets from the outset of the ticketing process.  Prior to its switch to "all in" pricing across its entire platform, Ticketmaster's ticketing interface included a toggle button that allowed consumers to "[s]ee prices including fees":

 

*See* Decl. of Beth James ("James Decl.") Ex. 2 (highlighting added).[2]  If a consumer toggled this button, the website would display the cost of the tickets including added fees. *See id.* Exs. 3–4.  Even if a consumer chose not to use this toggle feature, Ticketmaster disclosed that the cost of the ticket is "+Fees" at the point of seat selection.  *See* FAC ¶ 131.

Moreover, as the screenshots in Plaintiffs' FAC make clear, Ticketmaster displayed the final cost of the ticket—including added fees—prior to the point of sale, and it enabled consumers to see more information about those fees by selecting a drop-down menu displaying the amount of each fee Ticketmaster charges:

---

[2] As explained in more detail below, this website serves as the basis of Plaintiffs' claims, and Plaintiffs' FAC includes screenshots of the website that Plaintiffs characterize as "typical of Ticketmaster's purchase flow." *See* FAC ¶¶ 128–140.  This Court can therefore consider the contents of this website in ruling on the motion to dismiss. *See infra* at 7–8 (collecting cases considering websites under the incorporation-by-reference doctrine).



FAC ¶ 137.  After displaying the full price of the ticket (including an itemization of all added fees in the drop-down menu), Ticketmaster required a consumer to check a box stating, "I have read and agree to the current Terms of Use" and click "Place Order."  *Id.*

The Terms of Use incorporate and link to Ticketmaster's Purchase Policy.  *See* James Decl. Ex. 11.  The Purchase Policy, in turn, includes detail about Ticketmaster's purchasing process, including a section titled "Service Fees, Order Processing Fees, Taxes, and Shipping Charges."  *Id.* Ex. 12.  That section states explicitly that "[t]ickets purchased on our Site are typically subject to, among other possible fees, a per ticket service fee and a per order processing fee."  *Id.* § 6.  It also states that "[i]n many cases," consumers "may need to pay a shipping or delivery fee."  *Id.*  And it makes clear that "[r]esale tickets are also typically subject to a per ticket service fee and a per order processing fee," which "may be subject to change."  *Id.*

## B.  Allegations of the FAC.

Plaintiffs' FAC ignores all these facts.  Instead, Plaintiffs accuse Ticketmaster of "advertis[ing] deceptively low prices at the outset of its transactions while hiding expensive

5

junk fees until the end of the transaction." FAC ¶ 1.  According to Plaintiffs, "Ticketmaster advertise[d] an artificially low price, then uses partitions, a countdown clock, and urgent pop-up warnings in its purchase flow to pressure users to pay added junk fees at the end of the transaction." *Id.* ¶ 123.

Plaintiffs do not dispute that Ticketmaster is entitled to charge added fees.  Nor do they dispute that Ticketmaster disclosed all added fees prior to the point of purchase. Plaintiffs nonetheless allege that Ticketmaster's "purchase flow" caused consumers to "focus on the deceptively low initial base price and build purchasing commitment through several intermediate steps," which allegedly leads them to "buy more tickets and tickets at higher prices" than if Ticketmaster had "display[ed] the full price up front." *Id.* ¶ 3.  And while Plaintiffs admit that Ticketmaster disclosed that its prices are "+Fees" at the point of seat selection, they allege that this disclosure is inadequate because Ticketmaster "intentionally avoid[ed] listing the actual added junk fee amount," the "nature of the fees," or "whether they are government mandated" until the end of the transaction.  *Id.* ¶ 131.

Each Plaintiff's allegations follow the same formula.  Each Plaintiff alleges that she purchased tickets to a live event through Ticketmaster.  *See id.* ¶¶ 15, 24, 31, 40, 50, 60, 70, 79.  Each Plaintiff alleges that "Ticketmaster did not initially advertise a price that included all mandatory fees" and that she "was not aware" that the cost of the ticket would include added fees.  *Id.* ¶¶ 16, 19, 32, 35, 41, 44, 51, 54, 61, 64, 71, 74, 80, 83.  And while Plaintiffs do not dispute that Ticketmaster disclosed those fees prior to the point of sale, each Plaintiff alleges that, "[a]s a result of the pressure exerted by Ticketmaster," she "purchased the tickets despite the addition of the previously undisclosed fees."  *Id.* ¶¶ 21, 27, 37, 46, 56, 66, 76, 85.  Based on these allegations, Plaintiffs assert five sets of claims:

<u>First</u>, Plaintiff Madrigal asserts claims under the Honest Pricing Law, Cal. Civ. Code § 1770(a)(29), the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500.  *See* FAC ¶¶ 188–254. Plaintiff Madrigal asserts these claims on behalf of a putative class of California

consumers, as well as a putative "California HPL Subclass" including California consumers who purchased tickets after July 1, 2024. *See id.* ¶¶ 167–168.

Second, Plaintiff Tempest asserts claims under Section 25.07(4) of the New York Arts & Cultural Affairs Law and Sections 349 and Section 350 of the New York General Business Law. *See* FAC ¶¶ 255–299. Plaintiff Tempest asserts these claims on behalf of a putative class of New York consumers. *See id.* ¶ 169.

Third, Plaintiff Sunde asserts a claim under the Illinois Consumer Fraud & Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, on behalf of a putative class of Illinois consumers. *See* FAC ¶¶ 170, 300–315.

Fourth, Plaintiff Pantuso asserts a claim under the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. Ann. § 501.201, on behalf of a putative class of Florida consumers. *See* FAC ¶¶ 171, 316–329.

Fifth, Plaintiff Adams asserts a claim under the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, on behalf of a putative class of Washington, D.C. consumers. *See* FAC ¶¶ 172, 330–345.

## III.   **ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facts indicating the "mere *possibility* of misconduct" fall short of meeting this plausibility standard. *Id.* at 679 (emphasis added).

While a court ruling on a motion to dismiss ordinarily "must disregard facts that are not alleged on the face of the complaint or contained in documents attached to the complaint," it may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached" to the complaint. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "The policy concern that this rule addresses is that a plaintiff with a legally deficient claim might otherwise

---

[3] Unless noted, all citations and internal quotation marks are omitted.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

survive a motion to dismiss by selectively omitting references to documents upon which he relies." *Riva v. Pepsico, Inc.*, 82 F. Supp. 3d 1045, 1049 n.1 (N.D. Cal. 2015).

Here, the FAC challenges the design of Ticketmaster's "purchase flow" through its website and includes several screenshots from that website. *See* FAC ¶¶ 128–140. This Court can therefore "examine the full webpage" in assessing the plausibility of Plaintiffs' claims. *Babaian v. Dunkin Brands Grp., Inc.*, 2018 WL 11445614, at *2 (C.D. Cal. Feb. 16, 2018); *see also Garcia v. Apple Seven Servs. San Diego, Inc.*, 2021 WL 3725921, at *2 (S.D. Cal. Aug. 20, 2021) (considering the contents of the defendant's website in ruling on a motion to dismiss because the plaintiff's complaint made "extensive references to the website" and "[t]he contents of the website form[ed] the basis of" the plaintiff's lawsuit). And because Plaintiffs expressly reference Ticketmaster's Terms of Use (*see* FAC ¶¶ 148–154), this Court may similarly consider the Terms of Use in ruling on this motion to dismiss. *See, e.g.*, *Mophie, Inc. v. Shah*, 2014 WL 10988339, at *3 n.2 (C.D. Cal. Jul 24, 2014) (finding that the defendant's terms of use were incorporated by reference into the complaint because the plaintiff had referenced the defendant's website, which included those terms). As explained below, those materials defeat Plaintiffs' claims.

### A.    Plaintiffs Have Not Plausibly Alleged That Ticketmaster's Ticketing Practices Mislead Reasonable Consumers.

Eight of Plaintiffs' ten claims arise under the general consumer protection statutes of California, Florida, Illinois, New York, and the District of Columbia. *See supra* § II.B. These claims are all governed by the "reasonable consumer" standard, which requires Plaintiffs to "show that members of the public are likely to be deceived." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019); *see also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 & n.2 (7th Cir. 2020) (noting that many states, including California, Florida, Illinois, and New York, apply this standard); *Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) (noting that the District of Columbia applies this standard).

This standard "requires more than a mere possibility" that Ticketmaster's purchasing process, which Plaintiffs challenge as deceptive, "might conceivably be misunderstood by

some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003); *see also, e.g.*, *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (noting that the "applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled"). Rather, Plaintiffs' complaint must establish "that it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" by the way in which Ticketmaster displays ticket prices. *Lavie*, 105 Cal. App. 4th at 508. Moreover, in determining whether Ticketmaster's ticketing process is likely to mislead reasonable consumers, "context is crucial," and "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289–90 (9th Cir. 1995)). For that reason, a plaintiff's claim of deception fails "as a matter of law" if "other available information . . . would quickly dissuade a reasonable consumer" from her mistaken interpretation of the content. *Moore v. Trader Joe's Co.*, 4 F.4th 874, 882 (9th Cir. 2021). Those commonsense principles doom Plaintiffs' claims.

The crux of Plaintiffs' lawsuit is that Ticketmaster misled consumers by using "a deceptively low upfront price to lure consumers into the purchase flow for tickets" and then "add[ing] exorbitant junk fees . . . after Plaintiffs and consumers had already relied on the low advertised price and made the decision to buy." FAC ¶ 2. But it is beyond dispute that Ticketmaster disclosed the existence of all fees—and enabled consumers to see the *amount* of those fees—at multiple points in the ticketing process prior to purchase.

For starters, Ticketmaster's ticketing interface included a toggle switch that allowed consumers in *every* jurisdiction—including those that do not mandate "all in" pricing—to "[s]how prices including fees" from the outset of each ticketing transaction. *See* James Decl. Ex. 2. Even if a consumer chose not to use this feature, that consumer would see that the ticket price is "+Fees" at the point of seat selection, which would disabuse any reasonable consumer from the mistaken impression that the base ticket price represents the full cost of the ticket. *See* FAC ¶ 130. And, as the screenshots Plaintiffs include in their

9

own complaint show, Ticketmaster disclosed the full cost of each ticket—including added fees—before any money changes hands.  *See id.* ¶¶ 135, 137.  No reasonable consumer who went through these steps could believe that the cost of a ticket was limited to the initial price displayed at the outset of the ticketing process.

Moreover, Ticketmaster's ticketing interface requires users to acknowledge that they "have read and agree to the current Terms of Use" before placing an order.[4]  *See id.*  The Terms of Use incorporate Ticketmaster's "Purchase Policy," which states that "[t]ickets purchased on our Site are typically subject to, among other possible fees, a per ticket service fee and a per order processing fee."  *See* James Decl. Ex. 11 (Terms of Use); *id.* Ex. 12, § 6 (Purchase Policy).  This is another reason why reasonable purchasers understand that the cost of a ticket will "typically" include added fees.  After all, when "a website presents users with specified contractual terms on a pop-up screen and users must check a box explicitly stating 'I agree' in order to proceed," it necessarily follows that "the consumer has received notice of the terms being offered and . . . knows or has reason to know that the other party may infer from his conduct that he assents to those terms." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856 (9th Cir. 2022).

Given these abundant disclosures, a reasonable consumer would not conclude that the price of a ticket was necessarily limited to the base ticket price that he or she saw at the outset of the ticketing process.  Instead, that consumer would understand from the disclosures that the cost of a ticket was "+Fees," and that he or she could determine the *amount* of those fees at multiple points in the ticketing process.  Plaintiffs suggest that these disclosures do not alleviate the supposed "pressure" that Ticketmaster's ticketing interface allegedly placed on consumers to complete their ticket purchases.  *See, e.g.*, FAC ¶¶ 123,

---

[4] Plaintiffs note that the Ninth Circuit held that the arbitration provision set forth in Ticketmaster's Terms of Use is unenforceable in *Heckman v. Live Nation Entertainment, Inc.*, 120 F.4th 670 (9th Cir. 2024).  *See* FAC ¶¶ 148–154.  But *Heckman* did not address the Terms of Use as a whole; instead, it addressed whether the arbitration agreement within the Terms of Use was unenforceable.  *Heckman*, 120 F.4th at 687.  That issue is irrelevant, as Live Nation and Ticketmaster are not moving to compel arbitration.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

125, 127, 134, 145.  But Plaintiffs' armchair psychology does not change the fact that Ticketmaster provides consumers with all the information they need to make an informed decision about whether to buy a ticket at a specific price.  And courts faced with similar cases challenging allegedly "hidden" fees have dismissed these cases where the defendant adequately disclosed the existence of further fees to consumers prior to purchase.

*Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020), is instructive.  There, the plaintiff alleged that Omni engaged in "false and deceptive advertising because it utilized a 'drip pricing' scheme and misrepresented the true rates for its hotel rooms." *Id.* at *2.  The court dismissed the lawsuit.  In its ruling, the court noted that the hotel booking page "explicitly discloses that the daily rate advertised does not equal the total cost of the room." *Id.* at *3.  "This disclosure," the court explained, "would put a reasonable consumer on notice that they would be charged some taxes and fees in addition to the daily rate for the total price." *Id.*  Moreover, the court noted, "a consumer can click on the prominently displayed 'Price details' drop-down menu to see a breakdown of what taxes and fees will be added to the daily rate." *Id.* at *4.  The court thus concluded that the plaintiff's allegations did not "show[] that the property fee was in fact hidden from consumers seeking to book a room at the Omni" or that "a reasonable consumer would be deceived into thinking the total cost of their room did not include the property fee." *Id.*

Similarly, in *Harris v. Las Vegas Sands L.L.C.*, 2013 WL 5291142 (C.D. Cal. Aug. 16, 2013), the plaintiff alleged that the defendants misled him by failing to disclose that the cost of a room at a Las Vegas casino would include a "resort fee." *See id.* at *1–3.  The court dismissed his lawsuit because the "[d]efendants explicitly disclosed the existence and amount of the resort fee, as well as the fact that taxes would be charged on top of it." *Id.* at *5.  The court noted not only that the defendant's website "explicitly states that the Grand Total does not include the resort fee and taxes," but also that "a reiteration of this disclosure appeared on a separately hyperlinked page of Terms and Conditions." *Id.*  And while the court conceded that "the term[] 'Grand Total' followed by a caveat expressed next to an asterisk might not be as explicit a phrase as 'Grand Total Not Including the $20

11

Resort Fee and Taxes You Will Be Charged Upon Checking Out,'" the court nonetheless found that "the hotel's phraseology and word placement would need to be taken completely out of context to be misunderstood or considered false." *Id.*

Here, just as in *Charbonnet* and *Harris*, Ticketmaster's booking website dispels any impression that the cost of a ticket is limited to the base ticket price. In states or venues that do not utilize "all in" pricing, Ticketmaster discloses the fact that the total cost of a ticket includes the base price "+Fees." *See* FAC ¶¶ 130–131. Ticketmaster also enables consumers to see the total cost of a ticket at multiple points in the booking process, either by toggling the "show prices with fees" button or at the end of the booking process. *See* James Decl. Exs. 2–4, 6; *see also* FAC ¶ 137. And Ticketmaster requires every purchaser to affirmatively assent to its Purchase Policy, which explicitly states that [t]ickets purchased on our site are typically subject to, among other possible fees, a per ticket service fee and a per order processing fee." *See id.* Ex. 12, § 6. Those disclosures are more than sufficient to put consumers on notice that Ticketmaster charges added fees.

Plaintiffs label Ticketmaster's conduct as "bait and switch" advertising and accuse it of "drip pricing." FAC ¶ 91. But these terms are "labels and conclusions," not well-pleaded factual allegations entitled to a presumption of truth. *Iqbal*, 556 U.S. at 678. And other courts have dismissed similar "hidden fee" lawsuits even when the plaintiffs invoked these terms. *See, e.g.*, *Charbonnet*, 2020 WL 7385828, at *2 (dismissing lawsuit accusing Omni of "utiliz[ing] a 'drip pricing' scheme").

*In re Amazon Service Fee Litigation*, 2024 WL 3460939 (W.D. Wash. July 18, 2024), illustrates this point. There, the plaintiff alleged that Amazon "engages in bait-and-switch advertising and drip pricing . . . by not disclosing the $9.95 service fee along with the advertised price of the Whole Foods grocery items and by obscuring the service fee during the check-out process." *Id.* at *8. The court dismissed this lawsuit. In so holding, the court found that the plaintiff's claim failed because "the fee . . . is disclosed on at least two separate webpages in the checkout process, including the final order page where the fee is again disclosed." *Id.* While the plaintiff "allege[d] that the disclosed fee is presented

12

in 'opaque text' that is 'small' and 'unlikely to be noticed by a reasonable consumer," the court found the plaintiff's characterization of the website inconsistent with the purchase flow depicted in the complaint. *Id*.  "At its root," the court reasoned, the plaintiff's claim was that Amazon "did not disclose the information" in the plaintiff's "preferred method." *Id*. at *9.  But the court found that this "does not itself constitute a deceptive act." *Id*.

Here too, Ticketmaster discloses both the existence and amount of added fees to each consumer at multiple points in the ticketing process.  Labeling Ticketmaster's pricing practices as "drip pricing" does not overcome reality.  Ticketmaster provides ample information to customers throughout the process showing how much their tickets will cost. *See, e.g.*, *Washington v. Hyatt Hotels Corp.*, 2020 WL 3058118, at *5 (N.D. Ill. June 9, 2020)* (dismissing lawsuit challenging "hidden" fees where the defendant "disclosed the existence and amount of resort fees not once but twice during the booking process," including "in the itemized list of final charges a consumer sees *before* reserving the room") (emphasis in original).  Because a reasonable consumer would understand that the base price of a ticket does not necessarily include added fees, Plaintiffs have not stated a viable consumer fraud claim against Ticketmaster.

### B.   Plaintiffs Have Not Stated a Plausible Claim Under California or New York's Ticket Pricing Statutes.

In contrast to the eight claims that Plaintiffs bring under general state consumer protection laws, their other two causes of action—Count I and Count V—are based on Plaintiffs' assertions that Ticketmaster violates state statutes that specifically govern ticket pricing.  First, Plaintiff Tempest asserts a claim under Section 25.07(4) of the New York Arts & Cultural Affairs Law. *See* FAC ¶ 255–264.  Second, Plaintiff Madrigal asserts a claim under California's "Honest Pricing Law," Cal. Civ. Code § 1770(a)(29). *See* FAC ¶¶ 188–208.  Neither claim is viable.

#### 1.   Plaintiff Tempest has not stated a claim under Section 25.07(4).

Section 25.07(4) requires the total cost of a ticket to be disclosed in a "clear and conspicuous manner . . . *prior to the ticket being selected for purchase*." N.Y. Arts & Cult.

Affs. L. § 25.07(4) (emphasis added).  Ticketmaster's website—which is incorporated by reference in the FAC—confirms that Ticketmaster complied with this statute by displaying the all-in price of a ticket from the outset of each ticketing transaction:



*See* James Decl. Ex. 7 (screenshot reflecting the purchasing flow for events in New York following the enactment of Section 25.07(4)).  It does not matter, for present purposes, that Plaintiffs failed to depict the specific purchase flow that a New York consumer would see in their complaint.  Because Plaintiff Tempest's claim under Section 25.07(4) is premised on her alleged purchase of tickets to an event in New York through Ticketmaster's website (*see* FAC ¶ 50), the website reflecting that purchase flow is incorporated by reference in the FAC, and this Court can "assume that its contents are true for purposes of a motion to dismiss." *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1004 (N.D. Cal. 2021). And because that website debunks Plaintiff Tempest's claim that Ticketmaster fails to disclose the "all in" price to New York consumers at the outset of the ticketing process, this Court need not accept that allegation as true.  *See Lazy Y Ranch v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) (noting that courts "need not accept as true allegations contradicting documents that are referenced in the complaint").

Even if the Court were to credit Plaintiff Tempest's allegations, they do not state a claim under Section 25.07(4).  The statute requires a ticket seller to disclose the total cost of the ticket "prior to the ticket being selected for purchase."  N.Y. Arts & Cult. Affs. L.

§ 25.07(4). Although the statute does not explicitly define what it means to be "selected for purchase," the title of the Act imposing this requirement makes clear that the New York legislature intended to "requir[e] ticket prices to be disclosed prior to a consumer purchasing such ticket." 2022 N.Y. Sess. Laws, ch. 358 (S. 9461); *see also Avella v. City of New York*, 29 N.Y.3d 425, 438 (N.Y. 2017) (under New York law, the "title of the legislation . . . may help in ascertaining the intent" of the Legislature). There is no dispute that Ticketmaster discloses the total cost of a ticket well before the end of the purchasing process. As a result, Plaintiff Tempest has not stated a claim under Section 25.07(4).

*Frias v. City Winery New York, LLC*, 2024 WL 4495177 (N.Y. Sup. Ct. Oct. 11, 2024), is instructive. There, the plaintiff alleged that the defendant ticket seller violated Section 25.07(4) because the defendant's ticketing interface would display a lower price when a purchaser hovered his or her cursor over a seat, even though a higher price would display when that purchaser actually clicked on the seat. *Id.* at *1. The court dismissed this lawsuit and found that the plaintiff failed to allege a violation of the statute.

In so holding, the court construed Section 25.07(4) to require that a seller "disclose the entire cost of a ticket, including fees, at some point prior to the customer choosing to buy the ticket on the website and proceeding with the ticket sales transaction." *Id.* at *3. Because the defendant "disclose[d] its 'Ticket Fee' after a customer clicks on a seat from an interactive seating chart on its website" but before the "point that a customer can 'Select' the seat to buy it and continue with the purchase process," the court found that there was no violation of Section 25.07(4). *Id.* at *4. And even if "the 'Ticket Fee' is not displayed on an event's landing page or interactive seating chart," the court explained, that would not violate the statute because "[i]t is only once the visitor has the option to select a specific seat that this prospective customer starts the act of buying the ticket under the statute." *Id*.

Here too, Plaintiff Tempest has not alleged a violation of Section 25.07(4). Even if one credits Plaintiffs' allegation that the ticketing flow depicted in the complaint was representative of a New York consumer's purchasing experience (which is false), that ticketing flow complied with Section 25.07(4) because it disclosed at the point of seat

15

selection that the price of the ticket is "+Fees." *See* FAC ¶ 131. When a consumer selected the seat for purchase, Ticketmaster disclosed the total cost of the ticket—including any added fees. *See id.* Ex. 6. That is all Section 25.07(4) requires.

### 2. Plaintiff Madrigal's claim under the Honest Pricing Law also fails.

California's Honest Pricing Law amended the CLRA to prohibit ticket sellers from "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges." Cal. Civ. Code § 1770(a)(29). Plaintiff Madrigal alleges that, after "the Honest Pricing Law went into effect," Ticketmaster "continued to advertise, display, and offer tickets to California residents without including all mandatory fees or charges other than taxes or fees imposed by a government." FAC ¶ 193.[5] But as explained above, Ticketmaster enabled users to see the "all in" price at the outset of every ticketing transaction by toggling the "show prices with fees" button. *See supra* § III.A. If a user toggled that button, Ticketmaster displayed the "all in" price from the beginning of the transaction. That is all that the Honest Pricing Law requires of Ticketmaster.

### C. Plaintiffs Lack Both Article III and Statutory Standing Because They Have Not Alleged a Cognizable Economic Injury.

As explained above, Plaintiffs have not plausibly alleged that Ticketmaster's conduct is either deceptive or unlawful. Plaintiffs' claims also fail for a separate reason: they have not plausibly alleged that Ticketmaster's alleged failure to display the "all in" price at the outset of each ticketing transaction resulted in any legally cognizable injury.

To have Article III standing, Plaintiffs must plausibly allege that they suffered an "injury in fact"—*i.e.*, "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not concrete or hypothetical." *Spokeo, Inc. v.*

---

[5] To be clear, Live Nation and Ticketmaster dispute Plaintiff Madrigal's allegation that Ticketmaster failed to display the "all in" price to California consumers following the effective date of the Honest Pricing Law, and if this case proceeds, Live Nation and Ticketmaster will show that her allegations are unfounded. But even if one takes Plaintiff Madrigal's allegations as true, they fail to state a claim under the Honest Pricing Law.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

*Robins*, 578 U.S. 330, 338–39 (2016). A "bare procedural violation" of a statute, "divorced from any concrete harm," does not satisfy this requirement. *Id.* at 341; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 427 (2021) ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court.") (emphasis in original); *In re Coca-Cola Mktg. & Sales Practices Litig.*, 2021 WL 3878654, at *2 (9th Cir. Aug. 31, 2021) (noting that an "abstract interest in compliance" with the law "is insufficient, standing alone, to establish Article III standing").

The state laws under which Plaintiffs sue similarly require Plaintiffs to establish that they suffered a legally cognizable injury. For example, California's UCL and FAL require Plaintiffs to establish that they "lost money or property." Cal. Bus. & Prof. Code §§ 17204, 17535. California's CLRA requires Plaintiffs to establish that they suffered "damage." Cal. Civ. Code § 1780(a). And the other jurisdictions whose laws Plaintiffs invoke—Florida, Illinois, New York, and Washington, D.C.—all require a showing of injury as well. *See, e.g.*, *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 860 (11th Cir. 2023) (noting that a "plaintiff must prove that there was an injury or detriment or consumers" to prevail on a FDUTPA claim); *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) ("The actual damage element of a private ICFA action requires that the plaintiff suffer 'actual pecuniary loss.'"); *Amalfitano v. NBTY Inc.*, 95 N.Y.S.3d 352, 355 (N.Y. App. Div. 2015) (noting that a plaintiff must establish "actual injury, apart from the alleged deceptive act itself," to have standing under New York's consumer fraud statutes); *Grayson v. AT&T Corp.*, 15 A.3d 219, 244 (D.C. 2011) ("[A] lawsuit under the CPPA does not relieve a plaintiff of the requirement to show a concrete injury-in-fact to himself.").

Plaintiffs cannot establish either Article III or statutory standing because they have not alleged any cognizable injury. Plaintiffs do not dispute that Ticketmaster is entitled to charge fees. They do not dispute that Ticketmaster disclosed the total price of their tickets—including added fees—before any money changed hands. Plaintiffs do not allege that they could have purchased the tickets for less using another ticket purchase platform,

17

and they do not claim that Ticketmaster would have sold them the tickets if they offered to buy them without paying the added fees.  No matter how many times Plaintiffs call them "junk fees," paying a fee that a seller is entitled to charge is not a legally cognizable injury.

Just as importantly, Plaintiffs do not dispute that they received exactly what Ticketmaster promised them: a ticket to a specific seat at a live event.  Even if Plaintiffs are correct that Ticketmaster did not disclose the "all in" price at the outset of every ticketing transaction, they have not "alleged that they were deprived of an agreed-upon benefit in purchasing" their tickets.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009); *see also McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 706 (9th Cir. 2020) (affirming dismissal of false advertising claim for lack of standing where the plaintiff did not allege that the defendant's product was "worth objectively less than what she paid for it").

Plaintiffs attempt to avoid this outcome by alleging that the "deceptively low initially advertised price" was a "substantial factor" in their purchasing decisions.  FAC ¶¶ 20, 26, 36, 45, 55, 65.  But this "formulaic recitation of the elements of a cause of action" does not suffice to establish that Plaintiffs suffered a legally cognizable injury.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Ticketmaster's disclosure of the fees and Plaintiffs' failure to allege that they did not receive what they paid for reduces their case to one about the *timing* of the fees.  That is fatal to Plaintiffs' claims of injury, as a plaintiff who is aware of the total cost of a product or service prior to purchase cannot plausibly allege any concrete harm arising from the timing of the defendant's disclosure of added fees.

In *Curanaj v. Tao Operating Group LLC*, for example, the plaintiff alleged that the defendant violated Section 25.07(4) of the New York Arts & Cultural Affairs Law by failing to disclose a "ticketing fee" at the outset of the transaction.  2024 WL 5456192, at *1 (N.Y. Sup. Ct. July 25, 2024).  The court dismissed the plaintiff's lawsuit and found that the plaintiff lacked standing because the defendant "clearly and conspicuously disclose[d] the fee on or before the final checkout page."  *Id.* at *2.

Although the plaintiff asserted that she had suffered a "classic pocketbook injury" because the defendant charged her an "unlawful" fee, the court rejected this theory.  *Id.*

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

"In effect," the court reasoned, the plaintiff's theory was "that because the fee was [purportedly] unlawful, she was harmed by paying an unlawful fee (even though she could have chosen to terminate the transaction and not pay the fee.)" *Id*. But the court found that this theory was unavailing because the plaintiff did "not contend that the **fee** itself is unlawful, but only that the **timing** of when it was disclosed was unlawful." *Id*. (emphasis in original). "[I]f the same fee had been disclosed at the outset," the court explained, "it would not have been unlawful, and thus she would have no damages." *Id*. The court thus concluded that the plaintiff "allege[d] no damages aside from the fact that she paid this fee," which was "inadequate to confer standing on [the] plaintiff." *Id*.

Similarly, in *Charbonnet*, the plaintiff alleged that the defendant failed to disclose that its room rates included added fees at the outset of the booking process and that "she was damaged by paying a higher price than the initial advertisement." 2020 WL 7385828, at *5. The court found that the plaintiff lacked standing because she could "not establish[] that she suffered any economic harm from Omni's alleged nondisclosure." *Id*. As the court explained, the plaintiff's allegations did not "show that she paid more than she otherwise would have paid, or that she booked a hotel room when she otherwise would not have done so." *Id*. To the contrary, the court noted "Plaintiff knew prior to completing her reservation that the total cost of a hotel room at the Omni included taxes and fees, and she went ahead with booking it at the higher price anyway." *Id*. Because the plaintiff's allegations did not "show that she would have acted any differently had the property fee been disclosed to her earlier," the court found that she lacked standing and dismissed her lawsuit. *Id*.

That reasoning applies with equal force here. Plaintiffs have not alleged any facts suggesting that Ticketmaster's purported failure to disclose added fees at the outset of their ticketing transactions caused them to buy tickets they otherwise would not have purchased or to pay more for those tickets than they otherwise would have paid. Plaintiffs allege neither that the tickets were worth less than the amount they paid for them nor that Ticketmaster would have accepted a purchase price that did not include the fees. All Plaintiffs allege is that the fees were purportedly "unlawful" because Ticketmaster did not

19

display the "all in" price at the beginning of their purchasing transaction. But even if Plaintiffs were correct that Ticketmaster's conduct technically violates the law (which is false), the Supreme Court has made clear that a "bare procedural violation" of a statute does not give Plaintiffs standing absent a "concrete harm" resulting from that violation. *Spokeo*, 578 U.S. at 338–39; *see also TransUnion*, 594 U.S. at 427. Absent any allegation that Ticketmaster's conduct caused Plaintiffs to spend money that they otherwise would not have spent, or that it diminished the value of the tickets Plaintiffs purchased, Plaintiffs have not alleged a concrete harm sufficient to give them standing.

Plaintiffs' boilerplate allegations do not establish a legally cognizable injury either. For example, Plaintiffs assert that if they had "known that the [added fees] were in fact just a secret profit-generator," they "would not have paid the charge if there were a viable option to purchase tickets without incurring it." FAC ¶¶ 22, 28, 38, 47, 57, 67, 77. But this allegation, which Plaintiffs added to the FAC only after Ticketmaster pointed out their failure to allege a cognizable economic injury, is not remotely plausible.

Common sense—which this Court must apply in ruling on a motion to dismiss (*see Iqbal*, 556 U.S. at 679)—dictates that consumers purchasing tickets to a live event care about the total cost of the ticket, rather than how that cost is broken down. That is especially true because the core theory of this lawsuit is that Ticketmaster misled consumers by misrepresenting the "true cost" of tickets. FAC ¶ 3. If Ticketmaster is entitled to charge added fees (which it is) and disclosed those fees to Plaintiffs before they purchased their tickets (which it did), it necessarily follows that Plaintiffs knew the "true cost" of their tickets. The fact that a portion of the "true cost" consists of added fees does not give Plaintiffs standing. Plaintiffs do not allege that the tickets were worth less than the amount they paid for them. Similarly, as Plaintiffs acknowledged during the parties' meet and confer, they are neither contending that Ticketmaster would have agreed to sell them the tickets for a lower price nor claiming that similar tickets were available to purchase elsewhere for less. *See* ECF No. 32, at 3.

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

In a similar vein, Plaintiffs amended their complaint to allege that Ticketmaster's pricing practices "force consumers to spend 'additional time' comparison shopping for tickets than they otherwise would." FAC ¶ 112 (quoting *Kahn v. Walmart Inc.*, 107 F.4th 585, 601 (7th Cir. 2024)). But despite Plaintiffs' suggestion to the contrary, *Kahn* did not hold that "wasted time" is a cognizable injury, and courts in the Ninth Circuit have held that it is not—at least not standing alone.[6] What *Kahn* actually held is that a consumer's desire *not* to spend "additional time searching for full pricing information" can lead that consumer to make an "uninformed decision." 107 F.4th at 601. But absent any plausible allegation that Ticketmaster withheld "full pricing information" from Plaintiffs, *Kahn* does not suggest that they have alleged a cognizable injury.

Moreover, even if "wasted time" was a cognizable injury under Article III (which it is not), Plaintiffs' allegations are insufficient. They do not allege that *they* "spen[t] 'additional time' comparison shopping for tickets." FAC ¶ 112. And if they *had* spent time "comparison shopping" on other ticketing websites and still purchased tickets from Ticketmaster, it would confirm that Plaintiffs were satisfied with Ticketmaster's prices. Plaintiffs "comparison shopping" theory establishes neither injury nor standing.

That leaves only Plaintiffs' reliance on *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907 (2016), which Plaintiffs cite in the FAC to assert that Ticketmaster's alleged failure to disclose the "true prices" of their tickets at the outset of their purchases deprived them of their "legally protected interest" in making an informed purchasing decision. *See* FAC ¶ 145. But *Veera* was a state court case, so Article III standing was not at issue. And the facts in *Veera* were different. The defendant there did not disclose the "true price" of the product until the final point of sale, 40 minutes after being lured into the store by a window

_____

[6] *See, e.g.*, *Physicians for Integrity in Med. Research, Inc. v. Hamburg*, 2014 WL 12591629, at *4 (C.D. Cal. Oct. 23, 2014) ("[C]laims of wasted time, loss of credibility, and fear of losing patients cannot establish an injury in fact . . . ."); *Keating v. Nordstrom, Inc.*, 2020 WL 1846988, at *4 (D. Alaska Apr. 10, 2020) (rejecting the proposition "that wasted time and embarrassment are a basis for monetary damages, without more").

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

advertisement and waiting in line to purchase the product. *See* 6 Cal. App. 5th at 920. Here, in contrast, Ticketmaster informed consumers at multiple steps of the ticketing process that the total ticket price would include added fees. *See supra* § III.1. Those disclosures, which would put any consumer on notice that they would be charged added fees, defeat any conceivable claim of economic injury—even under California law. *See Downey v. Pub. Storage, Inc.*, 44 Cal. App. 5th 1103, 1122 (2020) (rejecting the proposition that "*Veera* renders all postadvertising disclosures ineffective").

**D.      The Voluntary Payment Doctrine Bars Plaintiffs' Claims.**

Each state at issue in this litigation recognizes the voluntary payment doctrine, under which "[p]ayments voluntarily made, with knowledge of the facts, cannot be recovered." *Steinman v. Malamed*, 185 Cal. App. 4th 1550, 1557 (2010); *accord Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003) (same rule in New York); *McIntosh v. Walgreens Boots Alliance, Inc.*, 135 N.E.3d 73, 80 (Ill. 2019) (same rule in Illinois); *Easter v. City of Orlando*, 249 So.3d 723, 731 (Fla. Dist. Ct. App. 2018) (same rule in Florida); *Eagle Maint. Servs., Inc. v. D.C. Contract Appeals Bd.*, 893 A.2d 569, 582 (D.C. 2006) (same rule in D.C.). This "doctrine embodies the ancient and universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal." *McIntosh*, 135 N.E.3d at 80.

All five Plaintiffs admit that they voluntarily "purchased the tickets despite the addition of the previously undisclosed fees." FAC ¶¶ 21, 27, 37, 46, 56, 66, 76, 85. They also admit that the "true amount of the tickets (inclusive of fees)" was "disclosed [at] the end of the transaction." *Id.* ¶ 5. Plaintiffs also do not—and cannot—dispute that Ticketmaster disclosed the total cost to them before any money changed hands. Because Plaintiffs *chose* to pay those fees, the voluntary payment doctrine bars their claims.

*Curanaj* is once again instructive. There, as here, the plaintiff alleged that the defendant added a "ticketing fee" after the plaintiff selected two tickets on the defendant's website. 2024 WL 5456192, at *1. She claimed that the defendant's failure to disclose

22

this fee at the outset of the ticketing process was unlawful and brought a putative class action under Section 25.07(4). *See id.*  The court found that the voluntary payment doctrine barred the plaintiff's claims.  Although the plaintiff argued that the doctrine does not apply in cases challenging "statutorily unlawful" fees, the court rejected this argument because "the fees are not 'statutorily unlawful' per se, but are otherwise-allowable fees that were not disclosed timely."  *Id.* at *3.  And while the plaintiff argued that the doctrine did not apply because she alleged that she did not know the fee was unlawful, the court found this argument unavailing because the "plaintiff was well aware of the fee before she completed her purchase."  *Id.* (emphasis omitted).  Because the plaintiff "chose to continue with her transaction" even after seeing the added fees, the court found that the voluntary payment doctrine barred her claim.  *Id.*

That reasoning applies with equal force here.  Even if Plaintiffs subjectively felt pressure to complete their ticketing transactions, there is no dispute that Ticketmaster disclosed the total cost of each Plaintiff's ticket before he or she chose to purchase it.  Nor is there any serious argument that the purchase of a ticket to a concert, sports game, or other live event is the sort of purchase that one can make under coercion or duress.  *See, e.g.*, *Salling v. Budget Rent-a-Car Sys., Inc.*, 672 F.3d 442, 445 (6th Cir. 2012) (affirming dismissal of lawsuit against rental car company based on the voluntary payment doctrine and rejecting that plaintiff's allegation that his payment was not voluntary because "he had no choice but to pay the fee").  Because Plaintiffs had "knowledge of the facts" before paying any money to Ticketmaster, the voluntary payment doctrine bars their claims.

**E.     Plaintiffs Lack Standing to Seek Injunctive Relief.**

In addition to monetary relief, Plaintiffs seek to enjoin Ticketmaster's alleged failure to disclose the all-in price at the outset of its ticketing flows.  *See* FAC ¶¶ 205, 227, 244, 254, 264, 281, 298, 329.  As discussed above, Ticketmaster's current ticketing flow discloses the all-in price of each ticket at the point of seat selection in every jurisdiction.  Even before it made that change, Ticketmaster enabled consumers in *every* jurisdiction to see the all-in price from the outset of the ticketing process.  But even if this Court credited

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)

Plaintiffs' allegation that Ticketmaster continues to "conceal" added fees from consumers, Plaintiffs would still know from their prior purchases that the initial ticket price displayed on the website may not include added fees. Plaintiffs therefore face no likelihood of *future* harm, which means that they lack standing to seek injunctive relief.

"Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). For that reason, a plaintiff seeking injunctive relief must show a "sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). In false advertising cases, this requires the plaintiff to show that "she faces an imminent or actual threat of future harm due to [the defendant's] false advertising." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 971 (9th Cir. 2018). Plaintiffs cannot make that showing.

Plaintiffs' theory of deception is that "Ticketmaster uses a deceptively low upfront price to lure consumers into the purchase flow for tickets" before revealing that this price does not include added fees. FAC ¶ 2. But setting aside the fact that Ticketmaster made its planned platform-wide switch to all-in pricing, Plaintiffs have already purchased tickets from Ticketmaster and are therefore aware that the "upfront price" may not include added fees. Under similar circumstances, "several district courts relying on *Davidson* have found a plaintiff lacks standing where the plaintiff could 'easily discover whether a previous misrepresentation had been cured without first buying the product at issue.'" *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906 (N.D. Cal. 2021) (quoting *Cordes v. Boulder Brands USA, Inc.*, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) and collecting additional cases). That logic applies with equal force here.

Plaintiffs attempt to circumvent *Davidson* by alleging that, absent an injunction, Ticketmaster "will also likely continue to advertise, market, and promote its products and services in an unlawful and misleading manner, and members of the Classes will continue to be misled, harmed, and denied their rights." FAC ¶ 187. But the putative classes include only consumers who *already* bought tickets through Ticketmaster. *See id.* ¶¶ 167–172.

24

Just like Plaintiffs, those consumers—who have already completed the process of purchasing a ticket—would understand that the initial price may not include added fees, which means they too face no risk of further deception. And even if Plaintiffs were correct that other class members face a risk of future harm, that does not allow Plaintiffs to seek injunctive relief on behalf of putative class members: "Unless the named plaintiffs are *themselves* entitled to seek entitled to seek injunctive relief, they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (emphasis added). At a minimum, this Court should dismiss the claim for injunctive relief.

## IV.    CONCLUSION

Plaintiffs have not plausibly alleged that Ticketmaster's alleged failure to disclose the "all in" price of tickets at the outset of the ticketing process is likely to mislead reasonable consumers, that it violated any law, or that it resulted in any cognizable injury. This Court should therefore dismiss Plaintiffs' lawsuit. Because Plaintiffs have already amended their complaint, and because the website they cite in their FAC forecloses any plausible claim against Live Nation and Ticketmaster, this Court should dismiss Plaintiffs' lawsuit with prejudice and without further leave to amend. *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) ("[A] district court may dismiss without leave where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.").

Dated:  May 23, 2025                         JENNER & BLOCK LLP


                                             By: */s/ Brandon D. Fox*
                                                 Brandon D. Fox

                                                 Attorneys for Defendants
                                                 Live Nation Entertainment, Inc. and
                                                 Ticketmaster LLC

**CERTIFICATE OF COMPLIANCE**

The undersigned counsel for Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC hereby certifies that the foregoing memorandum of points and authorities contains 9,187 words, excluding the caption, the table of contents, the table of authorities, the signature block, and this certification.  The foregoing brief complies with the length limits set forth in the Court's Standing Order dated March 21, 2025, which provides: "Memoranda of Points and Authorities in support of or in opposition to motions shall not exceed 25 pages."  ECF No. 13, at 9 (bold font omitted).

Dated:  May 23, 2025                           JENNER & BLOCK LLP


                                          By: */s/ Brandon D. Fox*
                                              Brandon D. Fox

                                              Attorneys for Defendants
                                              Live Nation Entertainment, Inc. and
                                              Ticketmaster LLC

MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS
CASE NO. 2:25-cv-02375-JFW (KSx)